IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUDRA FOX and JEAN GREEN, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 21 C 3897 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| PHILLIPPE BUILDERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Although this case has been around since July of 2021, the parties didn't begin fact discovery until January of 2023. They originally said they would be able to complete discovery by June 30, 2023. [Dkt. ##42, 43]. But they did not manage that and were granted an additional three months until September 29, 2023. [Dkt. ##56, 57]. They weren't able to meet that deadline either, and were allowed another three and a half months until January 14, 2024. [Dkt. ##71, 72]. During that most recent extension period, the parties got into a squabble about the defendant's answers to a number of interrogatories. The plaintiffs filed a motion to compel, which was granted, and the defendant was ordered to respond fully to the outstanding interrogatories. [Dkt. ##76, 79]. As the case was rather simple and the discovery appeared rather routine, it was fair to assume that would be the last of it. But, the defendant's amended responses proved unsatisfactory to the plaintiffs so, here we are, with another motion to compel from the plaintiffs covering the same ground.

The defendant's amended answers were marred by drafting and clerical errors. Some of these errors resulted in answers that are, as the plaintiff complains, incomprehensible. The defendant repeatedly says: "The answer is correct in part of false allegation lies within the context

'(Fox) did not contribute to sale of said homes," "we are not disputing that Fox may have contributed in part." I have no idea what to make of "[t]he answer is correct in part of false allegation lies within the context . . . ." Other errors are easier to get past. I'm pretty sure the "and" in "[t]o earn a commission, Audra Fox, along with Cortney Phillippe, were required to be the procuring agents and the time the home sales contract was executed" was meant to be an "at." And I realize that in another answer or two, the defendant mixes up plaintiff, Fox, with plaintiff, Green. It's not a disaster, but given the fact that the defendant had two tries at this, it should have done a much better job.

But no one is wearing a white hat in this dispute. Such errors most likely could have been cleared up by a phone call from the plaintiff as Local Rule 37.2 envisions. So could the defendant's failure to follow Fed.R.Civ.P. 33(b) and verify the responses. Why the plaintiff chose not to follow this much easier course is something of a mystery. Ideally, a court would not be called upon to correct grammatical and typographical errors, especially when the public is ultimately helping to foot the bill. *See, e.g., Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015)("[W]hy should a court supply a subsidized dispute-resolution service [for unnecessary disputes] . . . when other litigants, who do need the court's aid, are waiting in a queue?").

Still, the plaintiff's failure to call the defendant on these mistakes does not excuse what certainly appears to have been careless drafting of the amended responses, especially when those responses were court ordered. It has to be said that the defendant's efforts were rather lackadaisical, so much so that attorney notes – "WHO EARNED THE COMMISSIONS" – were left in its answer to Fox Interrogatory No. 22. [Dkt. #80-1, Page 30/92]. Everyone makes mistakes and typos, *Dietz v. Bouldin*, 579 U.S. 40, 53 (2016); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S.

81, 100 (2014)(Scalia, J., dissenting)(". . . responsible attorneys, and even responsible judges, sometimes make mistakes . . . ."); *Hangzhou Aoshuang E-Com. Co. v. 008Fashion*, 336 F.R.D. 154, 156 (N.D. Ill. 2020)("Mistakes are common; everyone, including judges, makes them."), but the colloquial response to that kind of error, when added to the others, is "SMH."

To the defendant's credit, its response brief showed some contrition. It provided verification pages and, it promised to fix its answers to Fox Interrogatories Nos. 4, 16, and 21, and Green Interrogatories Nos. 4 and 14 by January 29, 2024 [Dkt. #86, at 3], so that should have been completed by now. Oblivious to its gaffe regarding Fox Interrogatory No. 22, defendant explained – not without making *another* drafting error and dropping the word "in" – that a list of Home Consultants that received commission can be found in its answer to Fox Interrogatory No. 15. [Dkt. #86, at 2 ("This is exhibited [sic] Defendant's answer to interrogatory 15 and set forth in Plaintiff's Second Motion to Compel.").

But, the plaintiffs continue to complain that the defendant's answers to Fox's Interrogatory No. 15 and Green's Interrogatories Nos. 18 and 19 remain incomplete. [Dkt. #88]. In these interrogatories, the plaintiff asked the defendant to explain why it denied the allegations that Fox and Green assisted the purchasers through the purchase process and completed all necessary sales activities required of her to earn commissions on each home. As to Fox (Interrogatory No. 15), the defendant answered that "Fox may have contributed in part. However, Fox did not bring these homes to closing, which is required to receive commission." As the defendant explains, whatever else Fox may have done along the way, "Fox did not take the homes to closing, which was required to earn a commission." [Dkt. #86, at 1]. The defendant answered similarly regarding Green (Interrogatories Nos. 18 and 19), and explained that Green did not bring the homes to closing, and

3

bringing the homes to closing is what was required to earn a commission. [Dkt. #86, at 2]. These answers, while perhaps unlikely, are adequate.

Defendant's position is that the closing, as opposed to everything leading up to it, is all. No one gets paid for anything they have done up to that point. There may have been a team of players executing a ninety-eight yard touchdown drive, but the player who breaks the plane of the goal line gets paid. If that turns out not to be the case defendant could be in trouble come summary judgment or trial. But, as the defendant has answered, this part of the plaintiff's motion is denied.

The parties are also squabbling over the deposition of Rachael Phillippe. While discussing notes she wrote regarding Fox's resignation, Rachael Phillippe testified that her daughter, Courtney, and Fox had been splitting commissions, and Fox felt she was actually carrying the workload while Rachael was showing favoritism to her daughter. Plaintiff's counsel then asked:

> Q: Okay. You write further, "I did not engage further on this due to Courtney's health status and to remain confidential as I would with any employee." What do you mean by that?
>
> A: Exactly what it says.
>
> Q: Well, what about Courtney's health status is relevant to why Audra would feel that you were playing favorites?

[Dkt. #80-1, Page 59/92]. At that point, defendant's counsel objected – incorrectly – and instructed Rachael not to answer any questions about Cortney's health, and he ended the deposition. Instructing a witness not to answer a question is generally improper – absent some claim of recognized privilege. *Redwood v. Dobson*, 476 F.3d 462, 468 (7th Cir. 2007)( Easterbrook); *LM Ins. Corp. v. ACEO, Inc.*, 275 F.R.D. 490, 492 (N.D.Ill. 2011); *Flowers v. Owens,* 274 F.R.D. 218, 222 (N.D.Ill. 2011). It certainly was here. Counsel claimed the topic was out of bounds as it was protected by

4

HIPAA, but didn't explain how. We should have. HIPAA applies only to "covered entities," defined as healthcare providers (e.g., doctors, clinics, psychologists, hospitals, dentists), health plans (e.g., medical, dental, HMOs, Medicare) or healthcare clearing houses (e.g., billing services, health management information systems, re-pricing companies). 45 C.F.R. § 164.502(a); 45 C.F.R. § 160.103 ("Covered entity means: (1) A health plan, (2) A health care clearinghouse, (3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter."). Moreover, there is a protective order in place that covers depositions. [Dkt. #22, Par. 3(c)]. So, it is unclear what so offended counsel that he abruptly – and improperly – ended the deposition.

Under Fed.R.Civ.P. 30(c)(2), "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Here, the defendant arguably put Cortney's health in issue and, more importantly, the defendant offers no support for the HIPAA objection or *any* privilege, arguing only that the information is irrelevant and offering absolutely no pertinent authority to support the contentions. [Dkt. #86, at 3]; see *Hakim v. Safariland, LLC*, 79 F.4th 861, 872 (7th Cir. 2023) (quoting *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022)("Seventh Circuit precedent is clear that 'perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.'"). As such, counsel's instructing the deponent not to answer violated long accepted case law and the Federal Rules of Civil Procedure – as well as my explicit instructions to counsel to call me if any issues arose during depositions. [Dkt. #48, 74]. So did counsel ending the

deposition. If counsel thought the deposition was "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party" counsel should have called me as he had been instructed or, at a minimum, made a motion under Fed.R.Civ.P. 30(d)(3). He did neither, and he had no excuse for not doing so. This part of the plaintiff's motion is granted, although the parties are, of course, free to work out some sort of stipulation regarding Cortney's contributions and absences from work.

In this case, two plaintiffs claim they were owed commissions they did not receive. That's not complicated, so this should not be so hard. Unfortunately, however, this case seems to be sinking into what courts have called a "hand-holding" phase of discovery that is unfortunately all too common. As used in judicial opinions, the phrase refers to that point in the case where counsel seem unable to complete routine discovery unless the court is there to walk them through it, step by step. *See, e.g., Garrard v. Rust-Oleum Corp.*, No. 20 C 00612, 2023 WL 1475164, at *2 (N.D. Ill. Feb. 2, 2023)("The referral from [the district court] was for "discovery supervision," not hand-holding."); *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, No. 3:15-CV-122 (CDL), 2022 WL 11237724, at *1 (M.D. Ga. Oct. 19, 2022)(". . . the drafters of the rules provided a logical, straightforward process that should be easily navigable by good lawyers without extensive hand-holding by the Court, so that discovery can be conducted efficiently, expeditiously, and without unnecessary expense."); *Williams v. Ests. of Hyde Park*, LLC, 2020 WL 5702297, at *1 (N.D. Ill. 2020). With two successive motions to compel about the same things in a span of two months, one hopes this isn't another one of those cases. Going forward, the parties are urged to follow Local Rule 37. 2 and the applicable Federal Rules of Civil Procedure, and to take to heart the court's minute orders. All that might render unnecessary much of the strife that needlessly

accompanies so much of what unfortunately and needlessly occurs in modern discovery. *See Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000)(Posner, J.)("[P]rotracted discovery, [is] the bane of modern litigation.").

Properly understood and implemented, discovery should not involve judicial hand- holding and step by step judicial oversight. *See, e.g., Garrard v. Rust-Oleum Corp.*, No. 20 C 00612, 2023 WL 1475164, at *2 (N.D. Ill. Feb. 2, 2023)("The referral from [the district court] was for "discovery supervision," not hand-holding."); *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, No. 3:15-CV-122 (CDL), 2022 WL 11237724, at *1 (M.D. Ga. Oct. 19, 2022)(". . . the drafters of the rules provided a logical, straightforward process that should be easily navigable by good lawyers without extensive hand-holding by the Court, so that discovery can be conducted efficiently, expeditiously, and without unnecessary expense."); *Williams v. Ests. of Hyde Park*, LLC, 2020 WL 5702297, at *1 (N.D. Ill. 2020). Unfortunately, with two successive motions to compel about the same things in a span of two months, it appears that these judicial reminders appear to have been overlooked. They should not be.

For the preceding reasons, the plaintiff's second motion to compel [Dkt. #80] is granted in part and denied in part.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/1/24

7